WEBBER (UNITED STATES v.). See Case No. 16,656.

---

## Case No. 17,327.

WEBER v. UNITED STATES.

[See Case No. 17,329.]

---

## Case No. 17,328.

WEBER v. UNITED STATES.

[Hoff. Dec. 10.]

District Court, N. D. California. Jan. 3, 1861.

MEXICAN LAND GRANTS—LOCATION—OBJECTIONS TO SURVEY.

[Where a decree locating a grant rests on the idea of conforming as near as may be, and in a general way, to the supposed intention of the grantor, the court is not precluded from thereafter modifying in a slight degree the directions of the lines so as to obtain a location by which existing rights acquired in good faith may be protected.]

[Claim of Charles M. Weber, to the ranch of Campo de los Francesca, including the site of the city of Stockton.]

HOFFMAN, District Judge. This case having been finally confirmed [Case No. 16,657], and a survey and location made by the surveyor general, it was brought before the court on exceptions to the location. After a full hearing of various counsel, the court delivered its opinion, setting forth at length its reasons for the judgment therein pronounced. [Id. 17,329.] A new survey has accordingly been made, and it now comes up for final approval.

The only question open for discussion is whether this last survey and location are in accordance with the opinion of the court. As, however, the correctness of the location, as directed by the court to be made, was accidentally touched, I may say that I have seen no reason to suppose that the conclusion arrived at and the survey ordered to be made were not correct, and as likely to carry into effect the presumed intention of the grantor as any that could be adopted. It has seemed to me that the surveyor has substantially conformed to the decree of the court.

It appears, however, that the claimant has long occupied a tract of land differing in a slight degree from the boundaries which a rigid adherence to the opinion of the court would require to be established. On both the northern and southern sides, the limits of the land so occupied by him would include tracts not embraced in a strict survey under the decree, while they fail to include tracts of corresponding size, which, under the decree, would be embraced within the boundaries. The tracts included within the claimant's own location have, in great part, been sold to subgrantees, who have, in some instances, made valuable improvements upon it; while the tracts not included or claimed by him have, in like manner, been disposed of by the United States under the pre-emption laws. It is suggested that under these circumstances a slight deflection of the lines which, reasoning on general principles, the court established, should be allowed; and that the grantees of the claimant on the one side, and of the United States on the other, should be protected by the survey finally approved.

If the diseño included a larger quantity of land than that indicated in the grant, so as to leave the claimant a right of election as to the precise location of the granted land, it is clear that he would be held to have exercised that election by making sales and receiving purchase money from subgrantees. He would, therefore, be estopped to give the grant a different location, so as to leave out the land of his own grantees, and to take in the settlements of the pre-emptors, who, trusting to his assurances as to his own boundaries, had in good faith settled on what they supposed, and he asserted, to be public land. If, then, this rule would be enforced against him in invitum, it would seem but reasonable to apply the same principle at his suggestion. The difficulty is that the diseño does not embrace any more than the granted land, for all the lines are evidently drawn for quantity, and so as to

include, as was supposed, eleven leagues. But the precise location of these lines is not so distinctly shown; on the contrary, the court has felt called upon to depart from their apparent location with reference to natural objects, in order to satisfy the other and more unmistakable calls of the diseño; the latter being considered clearly to show that the tract intended to be granted was bounded on the western side by the margin of the San Joaquin river, and that that line was to be of such a length as to include, with three other sides of equal length, a tract eleven leagues in extent. It further appeared to the court that the eastern or back line was intended to be parallel with the western line, which conformed to the general course of the river, and to be of equal length with it; and that the side lines were to be drawn so as to connect the extremities of these two lines respectively, notwithstanding that the angles formed at their junction might differ in some degree from those apparently indicated on the rude diseño submitted. This determination, resting, as it did, on the idea of conforming as near as might be, and in a general way, to what was supposed to be the intention, evidently quite undisputed, of the grantor, should not preclude the court from modifying in a slight degree the direction of those lines so as to obtain a location by which existing rights, bona fide acquired, may be protected. In almost all cases of survey location the decision of the court is, necessarily, rather the arbitrium boni viri than the enunciation of any absolute and positive judgment, founded upon the clearly defined and unmistakably expressed intention of the grantor.

The court is, in fact, compelled to exercise, in some degree, the discretion which the judge who gave juridical possession exercised under the Mexican laws, and which the system of granting, founded on rude diseños and very loosely defined boundaries, necessarily confided to him. It has appeared to me, therefore, that I ought to sanction the slight departure made in this case by the surveyor general from the theory of location established by the court, when, by so doing, I conform to what, it cannot be doubted, the juridical officer would have done without hesitation, and what is demanded ex æquo et bono for the protection of the rights of those who hold under the claimants, as well as under the United States.

For these reasons I am of opinion that the survey returned to this court by the surveyor general, and approved by him on the 23d day of January, 1860, should be confirmed and approved.